UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| JIM SIMPSON, *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. H-10-3032 |
| | § | |
| BARONNE VETERINARY CLINIC, INC., | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM OPINION AND ORDER

**I.   Introduction**

Pending before the Court is the defendant's, Baronne Veterinary Clinic, Inc., motion for summary judgment (Docket Entry No. 65). The plaintiffs, Jim Simpson, Ken Ridenour and Lulabelle Karr as the administrator of Mel Karr's estate, filed a response (Docket Entry No. 69), to which the defendant replied (Docket Entry No. 70). The plaintiffs filed a surreply (Docket Entry No. 74). After having carefully reviewed the motion, the responses, the record and the applicable law, the Court denies the defendant's motion in part and grants it in part. Specifically, the Court denies the defendant's motion with respect to the plaintiff's negligence claim, and the Court grants the defendant's motion with respect to the plaintiffs' gross negligence and lost potential profits claims.

**II.   Factual Background**

This tort case concerns the plaintiffs' race horse that allegedly sustained injuries as a result of the defendant's negligent veterinary treatment. The horse is a registered, racing quarter horse named "Jess for the Memories." On May 20, 2009, the defendant's veterinarian, Edgar Baronne, II, D.V.M., evaluated Jess for lameness, diagnosing him with swelling in his left femoro-tibial ("stifle") joints and distension in both tibio-tarsal ("hock") joints. To relieve Jess'

lameness, the defendant gave him injections of "Depo," a corticosteroid (anti-inflammatory) in his medial stifle joints, hock joints and each fore suspensory ligament.

On May 28, 2009, Jess could trot.  His lameness had improved, but his stride had shortened.  To further address the lameness, the defendant injected both stifles with dexamethasone and Sarapin, and it injected four suspensories with Sarapin.[1]  On June 1, 2009, the defendant inspected Jess and saw no signs of infection.  On June 4, 2009, Jess placed first in a race.  On June 8, he was sore in his left rear limb, with abundant, non-bacterial fluid in his medial stifle joint.  He was inspected during the next few days, and then on June 11, 2009, he was referred to a clinic environment to have his joints flushed.

On June 12, 2009, Jess' left stifle and both hocks were affected, and he was taken to Tom Hays, D.V.M. of the Elgin Veterinary Clinic.  On July 27, 2009, a problem was noted in Jess' right stifle for the first time.  Dr. Hays neither documented any joint infection nor ruled out the possibility of a steroid induced arthropathy (reaction to the medication) as the cause of all of his problems.  Nor could he say that, if Jess had an infection, bacteria had gained entry through an injection instead of through the blood after an infection had occurred elsewhere in his body.

Dr. Hays could not rehabilitate Jess, and he can no longer race.  The plaintiffs filed suit on December 21, 2009.  The Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332.

### III.   Contentions of the Parties

#### A.   The Defendant's Contentions

The defendant contends that it is entitled to summary judgment with respect to the plaintiffs' negligence claim because the plaintiffs have presented no satisfactory evidence to prove that Jess' joints were infected.  The defendants aver that the plaintiffs' expert, Jeffery Lee

---

[1] It is unclear exactly what date this second series of injections occurred, but it seems to have occurred sometime between May 28, 2009, and June 1, 2009.

Young, D.V.M., failed to consider and exclude other possible causes of Jess' injury and failed to provide an objective and reliable basis for his opinion. The defendant maintains that the doctrine of *res ipsa loquitur* does not apply because the actions complained of are not within the purview of a layman's common knowledge. The defendant asserts that the plaintiffs cannot sustain their gross negligence claim and that the plaintiffs cannot recover Jess' lost potential profits. The defendant also objects to certain portions of the plaintiffs' proffered summary judgment evidence.

### B. The Plaintiffs' Contentions

The plaintiffs contend that the defendant negligently treated Jess, and that consequently he developed debilitating joint infections. They assert causes of action for common law negligence and for gross negligence under Texas law. They claim that the doctrine of *res ipsa loquitur* applies, and they seek damages for, *inter alia*, Jess' lost potential profits. The plaintiffs maintain that Dr. Young rendered sufficient testimony to withstand summary judgment scrutiny, and they claim that all of their proffered summary judgment evidence is admissible.

### IV. Standard of Review

Federal Rule of Civil Procedure 56 authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to that party's case and on which that party bears the burden at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir. 1994) (*en banc*). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also, Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate if "the pleadings, the discovery and disclosure

materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (quoting *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994), *cert. denied*, 513 U.S. 871 (1994)). The nonmovant may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l*, 343 F.3d 401, 405 (5th Cir. 2003) (quoting *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether the nonmovant has established a genuine issue of material fact, a reviewing court must construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but

only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court may not "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (citing *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Houston*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)).

## V. Analysis and Discussion

The Court denies the defendant's motion in part and grants it in part. Specifically, the Court denies the defendant's motion regarding the plaintiffs' negligence claim, and the Court grants the defendant's motion regarding the plaintiffs' gross negligence and lost potential profits claims.[2]

### A. The Defendant's Objection to the Plaintiffs' Evidence

Before the Court can address the substance of the parties' arguments, it must first determine what portions of the proffered summary judgment evidence are permissible. The admissibility of summary judgment evidence is generally subject to the same rules that govern the admissibility of evidence at a conventional trial. *Munoz v. Int'l Alliance of Theatrical Stage Employees*, 563 F.2d 205, 207 n.1 (5th Cir. 1977). Federal Rule of Civil Procedure 56(e) requires that "supporting or opposing affidavit[s] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on

---

[2] The Court refrains from ruling on whether the doctrine of *res ipsa loquitur* applies to the plaintiffs' negligence claim. The Court retains the right to determine whether to present the doctrine in the form of a jury instruction at trial after all of the evidence has been presented.

the matters stated." With this legal framework in mind, the Court turns to the defendant's objections.

At issue is whether the Court may consider: (1) the plaintiffs' averments of Jess' racing potential;[3] (2) the plaintiffs' allegation that the defendant diagnosed an infection in Jess' right stifle around July 27, 2009; and (3) Mel Karr's deposition testimony that two sets of veterinarians diagnosed an infection. The Court determines that it need not rule on the first defendant's objection concerning Jess' pedigree and potential, because the objection has become moot. The plaintiffs' claims regarding Jess' pedigree and potential speak to the lost potential profits issue, and the Court has granted summary judgment in favor of the defendant on that issue, as explained *infra* in Section **V(D)**. Next, the Court overrules the defendant's second and third objections concerning Jess' alleged infection. The infection issue is the fulcrum around which this case turns. The parties have each presented expert testimony regarding the existence of an infection, and the Court will allow the parties to prove or disprove the existence of an infection at trial.

### B.     Negligence

The Court denies the defendant's summary judgment motion regarding the plaintiffs' negligence claim because the Court determines that the plaintiffs have proffered sufficient expert testimony and evidence of infection to establish a genuine issue of material fact. The infection issue is the focal point of this case, with both parties presenting conflicting expert testimony.

To prevail on their negligence claim, the plaintiffs have "the burden to establish by expert testimony: (1) the applicable standard of care; (2) the facts that show the [defendant] deviated

---

[3] The plaintiffs claim that "[b]oth the sire and the dam [of the horse] were high quality racing quarter horses with impressive pedigrees. As of the spring of 2009, Jess was a horse with a rapidly increasing value. He was developing well . . . [He] showed great potential as a racing quarter horse. This potential was demonstrated both by objective measured characteristics and actual performance."

from that standard, [*sic*] and (3) that the deviation proximately caused [Jess' injury]." *McGee v. Smith*, 107 S.W.3d 725, 727 (Tex. App. – Fort Worth 2003, pet. denied). To establish a negligent act or omission, expert testimony is required from a member of the veterinary medical profession with education, skill and experience similar to those of the defendant. *See Downing v. Gully*, 915 S.W.2d 181, 185-86 (Tex. App. – Fort Worth, 1996).

The plaintiffs also have the burden of proving by expert testimony that the defendant's course of treatment would not have been undertaken by a reasonable and prudent member of the veterinary medical profession under the same or similar circumstances. *See Hood v. Phillips*, 554 S.W.2d 160, 165 (Tex. 1977); *Downing* 915 S.W.2d at 183. Further, the plaintiffs must show that the defendant's course of treatment varied so greatly from recognized and accepted medical procedures as to constitute negligence. *Beal v. Hamilton*, 712 S.W.2d 873, 876 (Tex. App. – Houston [1st Dist.] 1986, no writ) (internal citation omitted).

Federal Rule of Evidence 702 states that a qualified expert may testify only if "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." "The admission or exclusion of expert testimony is a matter left to the discretion of the trial court, and that decision will not be disturbed on appeal unless it is manifestly erroneous." *Primerose Operating Co. v. Nat'l Am. Ins. Co.*, 382 F.3d 546, 563 (5th Cir. 2004) (internal citation omitted). "[T]he trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system. *Primerose*, 382 F.3d at 562 (internal citation omitted). Rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky

but admissible evidence. *Id.* (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993)).

Texas courts have applied the same standard of care to medical negligence cases as to veterinary negligence cases. *Downing*, 915 S.W.2d at 183. In medical causation cases, a medical causation expert should have considered and excluded other possible causes of the injury. *Viterbo v. Dow Chem. Co.*, 826 F.2d 420, 423 (5th Cir. 1987); *McNabney v. Lab Corp. of Am.*, 153 Fed. Appx. 293, 295 (5th Cir. 2005) (internal citations omitted). However, "[t]his does *not* necessitate an exhaustive search that forces an expert to disprove or discredit every possible cause other than the one espoused by him" as long as his opinion does not simply pick the cause that is most advantageous to one party's claim while ignoring other relevant evidence. *McNabney*, 153 Fed. Appx. at 295 (internal citations and quotations omitted); *see also, Brooks v. Goettl*, Cause No. A-05-CA-642 LY, 2006 U.S. Dist. LEXIS 89584 (W.D. Tex. Dec. 12, 2006). Nonetheless, an expert's testimony must be based on more than mere unsupported opinions. *See Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 144 (1997).

The Court finds that Dr. Young's expert opinion is sufficiently objective and reliable to survive summary judgment scrutiny. The Court has discretion both to determine an expert opinion's reliability and to decide what factors to weigh when making that determination, pursuant to the Court's gate keeping role under Federal Rule of Evidence 702. *Munoz v. Orr*, 200 F.3d 291, 301 (5th Cir. 2000) (internal citation omitted). The Court need not find Dr. Young's report unreliable simply because he augmented his original findings by filing a supplemental report after reviewing additional information. The fact that an expert reviews additional material that reaffirms his initial opinion does not automatically bar the admission of his expert testimony.

Dr. Young has practiced as an equine veterinarian for twenty-seven years, is licensed in Texas and has extensive experience with race horses' joint injections. He testified that the cause of joint infection in a horse "can be iatrogenic or induced by a veterinarian or a penetration of a needle injecting into the joint." He opined that three out of four of Jess' joints were infected based on a fluid analysis. He also opined that, in all reasonable probability, the cause of Jess' joint illness is "a common source of contamination of each joint," and that "at some point during the procedure the standard of care was not met."

Prior to issuing his supplementary report, Dr. Young reviewed discovery responses, another doctor's report, relevant bills, several depositions, a transcript of Dr. Baronne's notes, Jess' patient history, records from Elgin Veterinary Hospital, Inc. and various x-rays. In his supplementary report, he addressed other potential causes of infection and discredited those causes. For example, he concluded that steroid induced arthropathy and systemic infection were unlikely sources of Jess' malady. The defendant's conflicting expert testimony simply raises a fact issue for a jury. Therefore, the Court denies the defendant's motion concerning the plaintiffs' negligence claim because the Court determines that genuine issues of material fact remain in dispute.

### C. Gross Negligence

The Court grants the defendant's motion for summary judgment regarding the plaintiffs' gross negligence claim. Under Texas law, gross negligence means:

> an act or omission:
> (A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and
> (B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Tex. Civ. Prac. & Rem. Code. § 41.001(11). An employer is not liable for an employee's gross negligence, unless the employer authorized or ratified the act or the employee was unfit and the employer recklessly employed him. *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627, 630 (Tex. 1967).

The plaintiffs have presented no evidence to support their gross negligence claim. In fact, Ridenour and Simpson even testified in their depositions that the defendant did not knowingly or intentionally injure Jess. Therefore, the Court grants summary judgment for the defendant's on the gross negligence claim because no genuine issues of material fact remain in dispute concerning gross negligence.[4]

### D.    Lost Potential Profits

The Court grants the defendant's motion for summary judgment regarding the lost potential profits issue because Texas law does not allow an injured animal's owner to recover the animal's lost potential profits. *Canadian v. Guthrie*, 87 S.W.2d 316, 318 (Tex. Civ. App. 1935, no writ); *Petco Animal Supplies, Inc. v. Schuster*, 144 S.W.3d 554, 566 (Tex. App. – Austin 2004, no writ). Rather, a plaintiff's recovery is limited to the difference in the animal's market value immediately before and after any injury alleged to have been caused by the defendant. *Canadian*, 87 S.W.2d at 318; *Zeid v. Pearce*, 953 S.W.2d 368, 368 (Tex. App. – El Paso 1997, no writ).

The Court finds the plaintiffs' reference to the *R.A. Corbett* case inapposite. *See R.A. Corbett Transport, Inc. v. Oden*, 678 S.W.2d 172, 176 (Tex. App. – Tyler 1984, no writ). It is true that the *R.A. Corbett* court stated that the "generally accepted rule is that where it is shown that a loss of profit is a natural and probable consequence of the act or omission complained of,

---

[4] This summary judgment order moots the Court's earlier order (Docket Entry No. 68) granting the defendant's unopposed motion to bifurcate the trial concerning the exemplary damages issue (Docket Entry No. 67).

and that amount is shown with sufficient certainty, there may be a recovery therefor [*sic*]." *R.A. Corbett*, 678 S.W.2d at 175-76. However that same court, in the very next sentence, proceeded to say:

> Anticipated profits cannot, however, be recovered where they are dependent upon uncertain and changing conditions, such as market fluctuations or a change of business, or where there is no evidence from which they may be intelligently estimated. Evidence to establish profits must not be uncertain or speculative.

*Id.* at 176.

The plaintiffs seek to recover speculative lost profits for a gelded race horse, and that horse's potential profits are far too uncertain to be recoverable. *See id.* Horse racing is considered gambling for a reason. Accordingly, the Court grants summary judgment for the defendant on the lost potential profits issue.

## VI. Conclusion

Based on the foregoing discussion, the Court DENIES the defendant's motion in part and GRANTS it in part. More particularly, the Court denies the defendant's motion regarding the negligence claim, and the Court grants the defendant's motion regarding the gross negligence and lost potential profits claims.

It is so **ORDERED**.

SIGNED at Houston, Texas this 22nd day of March, 2011.

_____
Kenneth M. Hoyt
United States District Judge